586 A.2d 1375

**David GARCIA and Marycellis M. Garcia, Appellants,**

**v.**

**David J. SAVAGE t/d/b/a David J. Savage Corporation,**

**v.**

**PENNSYLVANIA HOUSE.**

Superior Court of Pennsylvania.

Argued Oct. 4, 1990.

Filed Feb. 19, 1991.

Robert P. Wilkison, Sunbury, for appellant.

Gregory E. Cassimatis, Harrisburg, for Savage, appellee.

Before OLSZEWSKI, BECK and HOFFMAN, JJ.

BECK, Judge:

The issue is whether summary judgment may be had where the moving party supports his motion with the deposition testimony of allegedly disinterested witnesses and the testimony of the movant himself.

We hold that proper application of the rule announced in *Nanty–Glo Borough v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932), forbids entry of summary judgment in these circumstances.

This case arose out of an accident that occurred on April 24, 1986 on the premises of Pennsylvania House, a manufacturing facility in Lewisburg. Pennsylvania House contracted with Beery Building and Components ("Beery") to replace the roof on the facility. Beery subcontracted the roofing job to Laird Roofing ("Laird"). On the day set for the job to commence, Laird found that it did not have enough available workers to send to the Pennsylvania House project. Beery contacted appellee, David Savage, who owned a small construction business, and asked if Savage could send some of its workmen to assist in the Pennsylvania House project. Savage sent three of his workmen to the job.

Appellant, David Garcia,[1] was employed by Laird and was assigned to the Pennsylvania House project. He and the three workmen from Savage began the roof job by removing the old roof and the insulation under it. Shortly after lunch, while Garcia was working on the roof, he stepped onto an area where he thought the roof was still intact. In fact, the steel roof had already been removed from the section where he stepped and all that remained was the insulation that had been under the steel. Garcia fell through the insulation to the concrete floor thirty feet below, sustaining severe personal injuries.

Garcia brought a workmen's compensation claim against Beery, alleging that Beery was his statutory employer. He did not bring a claim against his direct employer, Laird,

---

**1.** Garcia is joined in this appeal by his wife, Marycellis Garcia.

because he had been informed that Laird's workmen's compensation insurance was no longer in effect at the time of the accident. Although Laird was later joined in the claim, Garcia ultimately received an award of workmen's compensation benefits against Beery alone.

On November 13, 1986, this action was commenced by writ of summons. The only defendant was Savage. Garcia alleged that his fall resulted from the negligence of the three Savage workmen in removing the steel roof without simultaneously removing the insulation underneath it. This was alleged to be negligent because the steel and the insulation were allegedly the same color so that removing the steel and not the insulation created the risk that someone would step on the insulation, thinking it was steel, and fall through, as did Garcia. The complaint alleged that Savage was liable for the negligence of his employees on a respondeat superior theory.

Savage thereafter joined Beery, Laird and Pennsylvania House as additional defendants. Beery and Laird were granted summary judgment by order dated December 22, 1988. Motions for summary judgment filed by Savage and Pennsylvania House were denied. After further discovery via depositions, Savage again sought summary judgment. He contended that since his three workers had been under the control of Beery, Laird and Pennsylvania House during their work at Pennsylvania House, he had no liability for their actions on that day. Savage supported his factual allegation that his workers were not under his control on the day of the accident by reference to deposition testimony by the three workers themselves, who had stated that they were not supervised by Savage on that day, and deposition testimony of Beery, Laird and Savage himself to the same effect. This motion was granted by order entered January 31, 1990. Garcia appeals the grant of summary judgment in favor of Savage.

Summary judgment is not to be lightly entered. The standard that must be met by a party seeking summary

judgment is exacting.  We have most recently stated it as follows:

>    Summary judgment may properly be entered only if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b).  The moving party has the burden of persuading the court that no genuine issues exist as to the material facts.  Summary judgment may be entered only where the case is free from doubt. *Hower v. Whitmak Associates,* 371 Pa.Super. 443, 445, 538 A.2d 524, 525, *allocatur denied,* 522 Pa. 584, 559 A.2d 527 (1988).  In passing upon a motion for summary judgment, moreover, a court must examine the record in the light most favorable to the non-moving party.  Any doubt must be resolved against the moving party. *French v. United Parcel Service,* 377 Pa.Super. 366, 371, 547 A.2d 411, 414 (1988); *Thorsen v. Iron and Glass Bank,* 328 Pa.Super. 135, 140–41, 476 A.2d 928, 930 (1984); *Chorba v. Davlisa Enterprises, Inc.,* 303 Pa.Super. 497, 500, 450 A.2d 36, 38 (1982).

*Laventhol & Horwath v. Dependable Insurance Associates, Inc.,* 396 Pa.Super. 553, 579 A.2d 388, 390 (1990).

█ Because the burden to establish the absence of a genuine issue of material fact is squarely on the movant, Rule 1035 imposes no requirement of a response by the non-moving party.  Failure to answer a motion for summary judgment, through the filing of counter-affidavits or otherwise, does not constitute a waiver of issues necessary to decide the motion. *Moore v. Gates,* 398 Pa.Super. 211, 580 A.2d 1138, 1140 (1990).  If the moving party has failed to support his motion adequately, summary judgment must be denied, even if the opposing party has not responded.

The issue in this case is whether Savage as the moving party adequately supported his motion for summary judgment by relying on his own deposition testimony and that of Beery, Laird and the three workmen.  Garcia argues that

this testimony is incompetent under the rule of *Nanty–Glo Borough v. American Surety Co.*, 309 Pa. 236, 163 A. 523 (1932). In *Nanty–Glo*, the plaintiff borough sued the surety company that had issued a bond on the borough's tax collector for amounts the tax collector had misappropriated from the borough. The surety company joined the tax collector as an additional defendant. At trial, the borough used the testimony of the additional defendant, the tax collector, who testified to the misappropriation, and of a county clerk who testified to the fact that timely notice of the claim had been given to the surety company. The surety company offered no evidence contradicting this testimony. The trial court granted plaintiff's motion for binding instructions and directed a verdict for the plaintiff. The surety company appealed. The company argued that even though it had not produced any testimony contradicting the oral testimony of the witnesses the plaintiff relied on, nevertheless the case had to be submitted to the jury since it was for them to decide whether to believe those witnesses. *Id.*, 309 Pa. at 237–38, 163 A. at 524. The Supreme Court agreed, reversed the judgment that had been entered on the directed verdict and remanded the case for a new trial. The Court held:

> In granting plaintiff's motion for binding instructions, the trial judge assumed the testimony of [the tax collector and the clerk] ... to be true. This he had no right to do, even though it was uncontradicted. In the words of JUSTICE SHARSWOOD, "However clear and indisputable may be the proof when it depends on oral testimony, it is nevertheless the province of the jury to decide, under instructions from the court, as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of the evidence." .... The credibility of these witnesses, without whose testimony plaintiff could not have recovered, was for the jury....

*Id.*, 309 Pa. at 238, 163 A. at 524.

■ Although *Nanty–Glo* itself was concerned with a directed verdict, it has equally been applied to motions for

summary judgment and is now most commonly applied in the latter situation.[2] *See Penn Center House, Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900 (1989). Thus, the general rule that flows from *Nanty–Glo* is that summary judgment may not be had where the moving party relies exclusively upon oral testimony, either through testimonial affidavits or deposition testimony, to establish the absence of a genuine issue of material fact.[3] *Id.*

**2.** The standard for deciding whether a party is entitled to summary judgment has long been equated with that for deciding whether that party would be entitled to a directed verdict at trial. *See Bremmer v. Protected Home Mutual Life Ins. Co.,* 436 Pa. 494, 497, 260 A.2d 785, 786 (1970).

**3.** There is one well-established exception to this proposition. Where the moving party supports his motion for summary judgment by using the *admissions* of the opposing party, even though they are testimonial, or of the opposing party's own witnesses, *Nanty–Glo* does not forbid the entry of summary judgment. In such a situation, the court may grant the motion without determining the credibility of the testimony, for it is an "unconditional surrender" by the opposing party, to which he must be held. *See Rivoli Theatre Co. v. Allison,* 396 Pa. 343, 152 A.2d 449 (1959).

Despite this long-standing exception to the *Nanty–Glo* rule, we note that in a very recent panel decision of this court it is suggested that although *Nanty–Glo* was originally intended to apply only to the testimony of the movant or his witnesses, the rule was expanded by the Supreme Court in *Penn Center House, Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900 (1989), to forbid summary judgment based on oral testimony, no matter what the source, and *even* if the testimony is an admission of the non-moving party. This suggestion is found in *Troy v. Kampgrounds of America, Inc.,* 399 Pa.Super. 41, 49, 581 A.2d 665, 669–670 (1990).

Although the foregoing interpretation of *Nanty–Glo* and *Penn Center House* is set forth in what appears to be dicta in the *Troy* opinion, we are nevertheless compelled to note our disagreement with it. We do not read the *Penn Center House* opinion to have made any change in the *Nanty–Glo* rule.

Summarily stated, the issue in *Penn Center House* was whether plaintiff, a shareholder in and resident at Penn Center House, a cooperative housing corporation, had violated Penn Center House's rules by keeping a dog in her apartment. The trial court granted summary judgment to Penn Center House based on the admission of plaintiff in her deposition testimony that she did indeed have a dog and on the affidavit of Penn Center House's manager to the effect that this violated the rules, of which plaintiff had knowledge. The Supreme Court reversed. The court found that Penn Center House had not established the lack of a genuine issue of fact and cited *Nanty–Glo.*

The panel in *Troy* interpreted this holding to mean that summary judgment cannot be granted where the moving party relies on the

Although Savage appears to concede that *Nanty–Glo* would prohibit summary judgment in his favor if he had relied on his own testimony alone, Savage argues that *Nanty–Glo* does not render his reliance on the testimony Beery, Laird and the three Savage workmen improper. He argues that since these witnesses were disinterested witnesses, their credibility need not be judged by a jury. Savage bases this argument on a suggestion found in a case decided by the Commonwealth Court. *See Post v. Dodd,* 116 Pa.Commw. 114, 541 A.2d 56 (1988). Since we are not bound by a decision of the Commonwealth Court on this issue, we are free to reject the principles set forth in *Post* if we find them to be inconsistent with the Supreme Court's decisions, or those of this court, or if we disagree with them on any ground. *Francisco v. Ford Motor Co.,* 397 Pa.Super. 430, 438 n. 8, 580 A.2d 374, 378 n. 8 (1990).

In *Post,* one defendant in a motor vehicle accident case supported his motion for summary judgment with evidence consisting of his own testimony, plaintiff's testimony and the testimony of an eye witness to the accident who was not a party to the suit. The parties opposing the motion did not produce evidence contradicting the movant's, but argued that his evidence was incompetent to support summary

testimony of the opposing party himself and, therefore, constitutes an expansion of *Nanty–Glo.* This conclusion is not supported by a careful reading of the *Penn Center House* opinion. The court did *not* hold that summary judgment had to be denied because defendant, the moving party, had relied on plaintiff's admission that she had a dog in her apartment. The court denied summary judgment because *despite* plaintiff's admission of this fact, there were still other issues of fact as to whether Penn Center House had specifically exempted plaintiff from the rule against pets or was unfairly and inconsistently enforcing this rule. These issues arose from plaintiff's other deposition testimony and her pleadings wherein she had alleged that she had been exempted from the rule and that its enforcement was discriminatory. The court's refusal to allow summary judgment resulted from the incompetence of the affidavit testimony of Penn Center House's manager to rebut these allegations by plaintiff. Thus, *Penn Center House* does not expand *Nanty–Glo* to bar reliance on admissions of the non-moving party in seeking summary judgment.

We note that there is no allegation in the instant case that Garcia ever admitted to the fact at issue, i.e. that the Savage workmen were not controlled by Savage at the Pennsylvania House project.

judgment under *Nanty–Glo*. The moving party countered by arguing that at minimum the deposition testimony of the eyewitness was competent to support the motion because she was an independent, disinterested witness who had no reason to misrepresent the facts. The Commonwealth Court rejected this contention, finding that this witness was not disinterested since she was the wife of the moving party. Nevertheless, the court appeared to accept the general proposition that oral testimony of a truly disinterested witness *would* be competent to support summary judgment. Thus, the Commonwealth Court's opinion may be cited for the proposition that there is an exception to the *Nanty–Glo* prohibition on oral testimony where that testimony is from a disinterested witness.

The *Post* court appeared to base this interpretation of *Nanty–Glo* on the manner in which the Supreme Court had described the *Nanty–Glo* rule in the case of *Curran v. Philadelphia Newspapers Inc.*, 497 Pa. 163, 439 A.2d 652 (1981). There, the Court stated that the *Nanty–Glo* rule prohibited summary judgment based solely on the oral testimony of the moving party or "his witnesses." *Id.*, 497 Pa. at 183, 439 A.2d at 662. The Commonwealth Court appears to have interpreted this phraseology to indicate that summary judgment cannot be supported if only based on testimony of witnesses who are somehow aligned with or biased in favor of the moving party.

We find no support whatsoever for this interpretation of *Nanty–Glo*, either in that case or in any other that has construed or applied it. *Nanty–Glo* itself prohibited the direction of a verdict for the plaintiff, who had presented evidence from its own representative, i.e. the county clerk, *and* from a party on the *other* side of the case, i.e. the tax collector himself, who was a defendant in the action. *See* discussion of *Nanty–Glo, supra*. Moreover, early cases decided not long after *Nanty–Glo* make no distinction between the oral testimony of interested and disinterested witnesses. For example, in *MacDonald v. Pennsylvania R.R. Co.*, 348 Pa. 558, 36 A.2d 492 (1944), the Supreme

Court reiterated the rule that where at trial a party presents his own interested testimony, he is entitled to have the case submitted to the jury, even though his evidence is contradicted by the testimony of disinterested witnesses for the other side. The mere fact that the opposing testimony was from disinterested witnesses did not remove from the jury their traditional function of judging the credibility of those witnesses. Importantly, the court cited *Nanty–Glo* in the course of this discussion. The clear implication is that credibility is an issue solely for the jury to determine, whether it be the credibility of an interested or a disinterested witness.

In addition, close analysis of cases directly applying *Nanty–Glo* and reversing an improper grant of summary judgment reveals that in such cases the courts have not distinguished between situations where the motion was supported by the testimony of interested or disinterested witnesses. For example, in *Bremmer v. Protected Home Mutual Life Ins. Co.*, 436 Pa. 494, 260 A.2d 785 (1970), the trial court had granted summary judgment to the defendant insurance company which had denied benefits to the beneficiary plaintiff on her deceased husband's life insurance policy. The insurance company alleged that the deceased had filed a fraudulent application for the life insurance, having failed to reveal a circulatory problem. The deceased allegedly knew of this problem because two doctors with whom he had consulted prior to applying for the insurance had diagnosed the problem. The insurance company supported its motion for summary judgment with the deposition testimony of the two doctors. Plaintiff produced no evidence contradicting this testimony. Nevertheless, the Supreme Court reversed the grant of summary judgment under *Nanty–Glo*, finding that the credibility of the two doctors' testimony must be judged by a jury. *Id.*, 436 Pa. at 498–99, 260 A.2d at 787. The fact that the two doctors were not in any way interested in the outcome of the case was not even mentioned by the court and did not impact on its decision to reverse the entry of summary judgment under *Nanty–Glo*.

Viewed in the light of the foregoing precedent, the Supreme Court's statement in *Curran* that *Nanty–Glo* prohibits reliance on the oral testimony of either the moving party or *his* witnesses cannot be read to inject an exception to the *Nanty–Glo* rule for the testimony of disinterested witnesses. When the *Curran* court referred to the moving party's witnesses, it clearly meant nothing more than those witnesses whose testimony the movant produces in support of his version of the facts, whether those witnesses have an interest in the outcome of the lawsuit or not. The court clearly did not mean to limit the *Nanty–Glo* rule only to the testimony of those witnesses who were interested in the moving party's success. Such a radical change in the law cannot be assumed from the *Curran* court's mere use of the phrase "his witnesses".

■ Thus, we find that there is not now nor has there ever been an exception to the *Nanty–Glo* rule which allows summary judgment based on the testimony of disinterested witnesses. This conclusion leads inexorably to the reversal of the trial court's grant of summary judgment for Savage in this case. Savage relied on his own testimony and on deposition testimony of witnesses, not including any admissions by the opposing party, and produced no documentary evidence in support of his motion. He sought to show that he had no control over his workmen on the day of the instant accident solely through oral testimony. The credibility of these witnesses' testimony on this crucial factual question should not have been accepted by the trial court. Whether or not they are to be believed, no matter what their interest or lack thereof in this lawsuit, is for a jury to decide.

The order of the trial court is reversed. The case is remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.

HOFFMAN, J. files a concurring statement.

HOFFMAN, Judge, concurring.

I join in the excellent and well-reasoned Opinion by Judge Beck, with the exception of the discussion in footnote 3 concerning *Troy v. Kampgrounds*, and the scope of our Supreme Court's decision in *Penn Center House v. Hoffman*. I was a member of the *Troy* panel, and I joined in Judge Ford Elliott's careful expression in that case. The facts in this case do not require a reexamination of the approach in *Troy;* accordingly, I offer no Opinion at this time on the question of the vitality of *Troy*. In all other respects, I join Judge Beck's thorough Opinion without reservation.