J-A17036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| THUONG ERIN WASIELEWSKI, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF THUONG D. NGUYEN, DECEASED | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : : | No. 2021 EDA 2023 |
| GOEBEL INSURANCE AGENCY, INC., AND CHRISTOPHER GOEBEL | : : | |

Appeal from the Order Entered July 13, 2023
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 220702372

BEFORE: BOWES, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:            **FILED JANUARY 10, 2025**

Thuong Erin Wasielewski ("Appellant"), both individually and as administratrix of the Estate of Thuong D. Nguyen ("Nguyen" or "the decedent"), appeals from the order granting the motion of Goebel Insurance Agency, Inc. and Christopher Goebel (collectively, "Appellees") for judgment on the pleadings. Following our review, we affirm.

The trial court set forth the following factual and procedural history:

> In December 2014, Oanh Kim Chung [("Chung")], sole owner and operator of Lee's Café [referred to interchangeably with "Chung")], contacted [Appellees] about acquiring insurance for her restaurant. [Appellees] procured an Ultrapack Plus Policy for Lee's Café from Erie Insurance Exchange (["]Erie["]), effective December 12, 2014 to December 12, 2015, which was renewed for the policy period of December 25, 2015 to December 25, 2016. Although Chung sought and was allegedly assured by [Appellees] that the Erie policy would cover her employees, the policy

contained an employer's liability exclusion and did not provide for worker's compensation coverage.

On March 3, 2016, Lee's Café employee [] Nguyen was murdered while at work. After receiving Lee's Café's notice of claim, Erie issued two reservation of rights letters dated April 22, 2016 and May 16, 2016, both informing Chung it was disclaiming coverage and stating that injuries to employees were excluded under the policy. On March 2, 2018[,] suit was brought [by Appellant] against Lee's Café, alleging wrongful death, premises liability, and negligent security.

Erie issued a denial letter on April 20, 2018, citing the policy's employer's liability exclusion and disclaiming coverage for the claims brought in the wrongful death action and recommending Chung contact her worker's compensation insurer about coverage. Erie then filed a declaratory judgment action on June 13, 2018 for a declaration that it did not owe Lee's Café a defense or indemnity in the wrongful death action[, though, while the declaratory action was pending, Erie defended Lee's Café,] and was granted summary judgment on November 15, 2019.

Prior to trial in the wrongful death action, Chung entered a settlement agreement with [Appellant], settling the claims and assigning her rights against [Appellees] to [Appellant]. [Appellant] initiated this suit on July 27, 2022[,] and filed a first amended complaint on November 22, 2022. In the first amended complaint, [Appellant brought] claims for breach of oral and written contract. [Appellant] allege[d] that [Appellees] failed to secure the proper premises liability and worker's compensation insurance that would have provided employee coverage in the wake of Nguyen's murder and shielded Chung from liability. The pleadings [were then] closed. [Appellees moved for judgment on the pleadings, which the trial court granted based on the running of the statute of limitations.]

Trial Court Opinion, 7/13/23, at 1-3 (footnotes and unnecessary capitalization omitted). Appellant timely appealed, and both she and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Whether the trial court erred in granting judgment in favor of [Appellees] because the statute of limitations period did not begin to run until the assignors sustained an actual injury, *i.e.*, when the insurance carrier stopped providing the assignors with a defense in the underlying personal injury action.

2. Whether the trial court erred in granting judgment in favor of [Appellees] because there were questions of fact as to when the assignors reasonably should have become aware that they had a claim against [Appellees] that precluded judgment being entered pursuant to the discovery rule.

3. Whether, even if this Court chooses to adopt the argument put forward by [Appellees], barring [Appellant's] claims against [Appellees] as a matter of law would be a harsh and unfair result, because this would be a case of first impression and [Appellant's] understanding of the relevant statute of limitations period was reasonable and made in good faith, and therefore it would be proper for this Court in such event to apply its holding only prospectively, as, for example, the Supreme Court did in *Lamp v. Heyman*, [366 A.2d 882 (Pa. 1976)].

Appellant's Brief at 3-4.

Our standard of review for appeals from orders granting motions for judgment on the pleadings is as follows:

[O]ur standard of review is *de novo* and our scope of review is plenary.  Judgment on the pleadings should be granted where there are no disputed issues of material fact, and the defendant is entitled to judgment as a matter of law.  *See*[, *e.g.*,] Pa.R.Civ.P. 1034.  All well-pleaded allegations in the [Appellant's] operative complaint are accepted as true.

*SpiriTrust Lutheran v. Wagman Constr., Inc.*, 314 A.3d 894, 904 (Pa. Super. 2024) (some internal citations omitted).

In all three of her issues, Appellant argues the trial court erred in granting Appellees' motion for judgment on the pleadings because the statute

- 3 -

of limitations did not begin to run until the insurer stopped providing Chung with a defense in the action between Appellant and Chung.  Because the issues arise from related facts and law, we address them together.

It is uncontested that the applicable statute of limitations is codified at 42 Pa.C.S.A. § 5525, which provides that breach of contract actions must be commenced within four years.  This Court has explained that it is "well-settled that the statute of limitations begins to run as soon as the right to institute and maintain a suit arises.  Thus, once a cause of action has accrued and the prescribed statutory period has run, an injured party is prohibited from bringing his or her cause of action." ***Morgan v. Petroleum Products Equip. Co.***, 92 A.3d 823, 828 (Pa. Super. 2014) (internal citations and footnote omitted).  The purpose of the statute of limitations is to "expedite litigation and thus discourage delay and the presentation of stale claims which may greatly prejudice the defense of such claims," and, accordingly, "[i]n light of the important purpose served by limitations periods, this Court has held that statutes of limitation[s] are to be strictly construed." ***Wachovia Bank, N.A. v. Ferretti***, 935 A.2d 565, 575 (Pa. Super. 2007) (internal citation and quotations omitted).  "Mistake, misunderstanding, or lack of knowledge in themselves do not toll the running of the limitations period." ***Id***. at 828 n.8.  "In a contract case, a cause of action accrues when there is an existing right to sue forthwith on the breach of contract." ***Kowalski v. TOA PA V, L.P.***,

206 A.3d 1148, 1158 (Pa. Super. 2019) (internal citations and quotations omitted).

> Relevant to this case,
>
> [a] plaintiff acquires a cause of action against his broker or agent where the broker neglects to procure insurance, or does not follow instructions, or if the policy is void or materially defective through the agent's fault. The broker . . . is liable to the same extent as the insurer would have been liable had the insurance been properly effected.

*Laventhol & Horwath v. Dependable Ins. Associates, Inc.*, 579 A.2d 388, 391 (Pa. Super. 1990) (internal citation, quotations, ellipses, and brackets omitted). Where a plaintiff suffers losses and the insurer denies coverage due to the broker's actions, the necessary elements for a cause of action against the broker are satisfied. *See id*.[1]

This Court has explained that there is an exception that tolls the statute of limitations called the "discovery rule," which we explained as follows:

> There are, however, exceptions to this general rule which act to toll the running of the statute. One of these exceptions is the discovery rule, which we have described as a judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct.

---

[1] A plaintiff may maintain separate causes of action against different defendants for the same losses, though the plaintiff may have "but one satisfaction of its claim for those losses." *Laventhol & Horwath*, 579 A.2d at 391.

- 5 -

*Morgan*, 92 A.3d at 828 (internal citation and quotations omitted). The purpose of the discovery rule is:

> to exclude from the running of the statute of limitations that period of time during which a party who has not suffered an immediately ascertainable injury is reasonably unaware he or she has been injured, so that he or she essentially has the same rights as those who have suffered such an injury.

*Id*. at 828 n.9 (internal citation omitted).

> This Court has explained how a plaintiff may assert the discovery rule:

> There are two ways for a plaintiff to assert the discovery rule: (1) by pleading sufficient facts in the complaint, or (2) by raising the discovery rule in response to the defendant's statute of limitations defense. ***Either way, the plaintiff must allege facts showing plaintiff's lack of prior knowledge regarding the nature of the alleged injury, and why plaintiff could not have learned of it at an earlier point.***

*SpiriTrust Lutheran*, 314 A.3d at 906 (internal citation omitted; emphasis added).

Appellant argues the trial court erred in granting Appellees' motion for judgment on the pleadings because the statute of limitations did not begin to run until judgment was entered against Chung in favor of Erie in the declaratory judgment action. *See* Appellant's Brief at 16. Appellant argues Chung suffered no actual damages until November 15, 2019, when the insurer stopped defending Chung in the tort action brought by Appellant. *See id*. at 17-19. Appellant argues that this Court's decision in *Kelly v. Carman Corp.*, 229 A.3d 634, 647-48 (Pa. Super. 2020), stands for the proposition that there must be "a significant injury as a direct result of the absence of promised

insurance coverage," which, in this case, would be the judgment in favor of Erie. *See* Appellant's Brief at 15. Appellant further argues the trial court erred in granting the motion for judgment on the pleadings because there is a question of fact about whether the discovery rule tolled the running of the statute of limitations, more specifically, whether Chung, the assignor, "should reasonably have understood [herself] to have suffered real damage in consequence of [Appellees'] conduct prior to November 15, 2019," *i.e.*, before judgment was granted in favor of Erie in the declaratory judgment action. *See id*. at 23.

The trial court considered Appellant's issues and concluded they merit no relief:[2]

> An action for breach of contract is subject to a four-year statute of limitations in Pennsylvania. The limitations period begins to run as soon as the right to institute and maintain suit arises. . .. All of [Appellant's] allegations stem from the procurement of the insurance and the policy clearly states the coverage types and limits, does not include worker's compensation insurance coverage, and clearly delineates the employer's liability exclusion.
>
> . . . [March 3, 2016 was the date of the decedent's death, and] appellate court[s have] held that a denial [of coverage] letter can also count as the . . . harm triggering the start of the limitations period[. I]n this case, Erie sent the denial letter on April 20, 2018[,] and filed the declaratory judgment action on

_____

[2] The trial court concluded the statute could have begun to run on several dates, but concluded that even taking the latest possible date, which is June 14, 2018, the limitations period had run before Appellant brought suit, and, consequently, Appellant's contract claims were barred. We excerpt the trial court's opinion insofar as it pertains to this date.

- 7 -

June 1[4], 2018, meaning the limitations period would have run on . . . June [14], 2022.

Regardless [of the triggering event], all of these dates are weeks, months, or years prior to when [Appellant] filed [her] complaint on July 27, 2022. [Appellant's] argument that [Chung's] claims against [Appellees] did not begin to accrue until after Erie won summary judgment ignores the numerous times Chung and the restaurant were put on notice that employees were not covered under the policy. And [Appellant's] main argument, that Chung could not bring the suit against [Appellees] while Erie was providing her defense in the wrongful death action, substitutes considerations of legal strategy for the applicable black-letter law. . ..

After summary judgment was granted to Erie, on November 15, 2019, [Appellant] waited another two[-]and[-a-]half years to file suit, when doing so at any time [after June 14, 2018 or even November 15, 2019 and] prior to June [14], 2022 (the end of the four-year limitations period running from the filing of Erie's declaratory judgment action) would have satisfied the outermost boundary of the limitations period. [Appellant] chose not to and now their claims are time-barred.

Trial Court Opinion, 7/13/23, at 3-5 (footnotes and unnecessary capitalization omitted).

Following our review, we discern no error by the trial court. Appellant asserted the following in her complaint: Chung engaged Appellees to serve as insurance brokers for Lee's Café, and Appellees procured for Chung an insurance policy for December 25, 2015 to December 12, 2016, which Appellees represented "provided liability coverage for the employees of Lee's Café." Am. Compl., 11/22/22, at ¶¶ 10, 12-14. However, notwithstanding Appellees assurances to Chung about the scope of coverage, the policy "provided no worker's compensation insurance[,] and[,] moreover[,]

contained specific exclusions that precluded coverage for the employees of Lee's Café." *Id*. at 14. Thus, the breach of Appellees' contractual duty occurred when Appellees procured the defective policy, *i.e.*, December 25, 2015.

The loss in this case is that for which coverage was sought, *i.e.*, the claim which would have been covered under the insurance policy had the broker procured the appropriate or requested insurance. *See Laventhol & Horwath*, 579 A.2d at 391 (stating that a plaintiff acquires a cause of action against her broker where the broker does not follow instructions, and the broker is liable for the loss to the same extent as the insurer had insurance been properly effected). Here, Appellant pleaded in her amended complaint that the loss for which coverage was sought, was the death of the decedent on March 3, 2016. *See* Am. Compl., 11/22/22, at ¶ 16. Appellant filed a wrongful death suit against Lee's Café on March 2, 2018. *See id*. at ¶ 15. In the wrongful death suit, the asserted amount of the loss, *i.e.*, damages flowing from the decedent's death, was in excess of $50,000. *See id*. at Ex. D (wrongful death complaint) at pp. 9-13. Thus, a loss occurred on March 3, 2016.

Finally, while Appellees alleged that Erie denied coverage in April 2018,[3] Appellant pleaded in her complaint that Erie filed for declaratory judgment against Lee's Café on June 14, 2018, and in that complaint, Erie asserted it was not obliged to cover losses stemming from the decedent's death. ***See, e.g.***, ***id***. at Ex. E (Erie's declaratory judgment complaint) at ¶¶ 38-40.

Accordingly, as of June 14, 2018, all of the necessary elements were present to trigger a breach of contract action against Appellees as brokers who failed to procure the requested insurance. The breach occurred in December 2015, when Appellees failed to follow instructions and procured a policy other than that which they had been contracted to procure. The loss occurred when the decedent died, *i.e.*, in March 2016. Erie definitively denied coverage in June 2018 when it filed for the declaratory judgment and forced Chung into separate litigation over the policy. At the time Erie denied coverage and sought declaratory judgment, Appellees became liable to Chung for breach of contract. ***See Laventhol & Horwath***, 579 A.2d at 391 (where a plaintiff suffers losses and the insurer denies coverage due to the broker's actions, the necessary elements for a cause of action against the broker are satisfied); ***Kowalski***, 206 A.3d at 1158 (in a contract case, a cause of action

---

[3] Appellees in their motion for judgment on the pleadings asserted that Erie issued a denial letter on April 20, 2018, ***see*** Mot. for Judgment on the Pleadings, 5/9/23, at ¶ 25. Appellant, in a single paragraph in her answer, denied paragraphs 21-26 of the motion as being "both immaterial and improper." ***See*** Pl.'s Resp., 5/24/23, at ¶ 21-26.

accrues when there is an existing right to sue forthwith on the breach of contract).[4]  Therefore, we agree with the trial court that Appellant's cause of action against Appellees accrued on, or no later than, June 14, 2018.

Appellant counters that **Kelly**, among other cases, supports her argument that a breach of contract claim against Appellees did not accrue until Erie won the declaratory judgment action.  **See** Appellant's Brief at 15-16.  Appellant insists that **Kelly** reflects a basic common law rule, and long-standing precedent, requiring an insured suffer "real damage" before bringing a breach of contract claim against the insurance broker for failing to procure appropriate or requested coverage.  Appellant contends that before Erie obtained the declaratory judgment, Chung only suffered theoretical and speculative losses due to the wrongful death case, namely, the cost of defense in the wrongful death action, which Erie theretofore provided.  Appellant adds that the court could have found Erie had a duty to indemnify Chung, which would have negated any right to sue Appellees.  **Kelly**, however, is distinguishable.

In **Kelly**, a broker failed to timely notify an insurer of an action against an insured, and, consequently, the insurer did not defend the insured,

---

[4] Following Erie's denial of coverage, Chung could have brought suit against Appellees.  **See Laventhol & Horwath**, 579 A.2d at 391 (a party may maintain separate causes of action for the same losses though only one satisfaction is possible).

resulting in a default judgment against the insured. *See* 229 A.3d at 641-42. Later, the insurer denied coverage and won a declaratory judgment action to that effect. *See id*. at 641. The earlier default judgment against the insured gave rise to negligence and breach of contract claims on the part of the insured against the broker. The insured assigned these claims to the plaintiffs from the default judgment case, the Kellys. *See id*. at 641.

In *Kelly*, while the case concerned an assignee's action against a broker based on an insurer's ultimate failure to defend, the statute of limitations issue there pertained to the *negligence* action against the broker, and the statute of limitations was therefore the two-year period applicable to torts. *See id*. at 647-48. Crucially, for torts, the statute of limitations begins to run at the time of the injury, which in *Kelly*, this Court described as the "real damage," *i.e.*, the judgment in the underlying tort action by the Kellys against the insured. *Id*. For purposes of the tort action, the *Kelly* Court concluded the damage occurred at the time of the default judgment against the insured, which occurred prior to the insurer's denial of coverage and also its favorable verdict in the declaratory judgment action. *See id*. at 646-48. *Kelly* thus stands for the proposition that—in a *tort* case—an injury is inflicted, and thus the right to commence a lawsuit arises, when the insured party is subject to a judgment based on an insurer's failure to defend due to the negligent actions of a broker, ***notwithstanding that the insurer has not yet denied the claim or obtained a declaratory judgment confirming its denial of***

*coverage*. The facts of *Kelly* are inapposite to the situation here, where the insurer has denied coverage and commenced a declaratory judgment action, allegedly due to the broker's actions, prior to the insured's settlement with a plaintiff in an underlying action. As discussed above, all of the elements for a breach of contract action were satisfied by June 14, 2018.[5] However, this does not end our inquiry, as Appellant has also invoked the discovery rule.

As noted above, where a plaintiff asserts the discovery rule to toll the running of a statute of limitations, the plaintiff must allege facts showing plaintiff's lack of prior knowledge regarding the nature of the alleged injury, and why plaintiff could not have learned of it at an earlier point. *See SpiriTrust Lutheran*, 314 A.3d at 906. Our review of the pleadings reveals that Appellant acknowledged the commencement of Erie's declaratory judgment action against Lee's Café, yet failed to allege *facts* to show that Chung did not know of the injury on June 14, 2018, when Erie filed a complaint

_____

[5] Moreover, while axiomatic that a party bringing a breach of contract action must assert damages with reasonable certainty, the test of whether damages are remote or speculative has nothing to do with the difficulty in calculating the amount of damages. *See Logan v. Mirror Printing Co. of Altoona, Pa.*, 600 A.2d 225, 227 (Pa. Super. 1991). Indeed, this Court has distinguished the *fact* that damages have occurred with the *amount* of damages. The threshold question is thus whether there are identifiable damages; damages are only speculative if the uncertainty concerns the fact, not the amount, of damages. *See id*. Here the loss was decedent's death, and the damages would flow from Lee's Café's liability for the death following Erie's June 2018 denial of coverage for decedent's death because of Appellees' asserted breach of contract, *i.e.*, failure to procure the requested insurance.

against Lee's Café in which it stated it was not obliged to cover the loss.[6] Because the discovery rule did not toll the statute of limitations, and there is no dispute of material fact that Erie denied coverage by June 14, 2018 at the latest, and Chung was aware of this denial, the statute of limitations began to run as of June 14, 2018. Four years from this date is June 14, 2022. The four-year statute of limitations thus expired on or about June 14, 2022. *See* 42 Pa.C.S.A. § 5525; *Morgan*, 92 A.3d at 828. Appellant filed her complaint on July 27, 2022. Consequently, this action is barred by the statute of limitations.

Lastly, Appellant maintains this Court, should it rule in favor of Appellees, should give the holding prospective effect only, pursuant to *Lamp*. In *Lamp*, our Supreme Court used its "supervisory power" to qualify a Rule of Civil Procedure, but only prospectively in the interest of fairness to the plaintiffs who relied on the Rule and the Court's prior interpretations of it. *See Lamp*, 366 A.2d at 888-89. We decline Appellant's request to apply this

_____

[6] Appellant does not allege Chung did not know that Erie had denied coverage; rather, Appellant argues that it was prudent for Chung to wait to see whether summary judgment would be granted in favor of Erie, rather than file suit against Appellees as soon as Erie denied coverage. *See* Appellant's Brief at 24-25. Appellant's argument misses the mark, however, because though the cause of action accrued against Appellees once Erie denied coverage, the four-year statute of limitations did not preclude Chung from filing suit against Appellees after summary judgment was entered in favor of Erie in November 2019; Chung still had two-and-a-half years after the November 2019 summary judgment grant to file suit against Appellees within the statute of limitations. Thus, Chung would not necessarily have had to defend in the declaratory judgment action simultaneously with filing suit against Appellees.

- 14 -

holding only prospectively, as the circumstances of *Lamp* are inapplicable here, given this Court has not presently modified or qualified an established rule that the parties have relied on. *See Kline v. Travelers Pers. Sec. Ins. Co.*, 223 A.3d 677, 690 (Pa. Super. 2019) (explaining that judicial discretion in whether to apply a rule retroactively or prospectively entails consideration of the purpose to be served by the new rule, the extent of the reliance on the old rule, and the effect on the administration of justice by the retroactive application of the new rule); *contra* Appellant's Brief at 26.

Accordingly, we affirm the order granting Appellees' motion for judgment on the pleadings.

Order affirmed.

Judge Nichols joins this decision.

Judge Bowes concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/10/2025

- 15 -